**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

UNITED STATES OF AMERICA )          CASE NO.  1:23-CR-19-AW-MAL

   -vs- )

JESSE RANCE MOORE, )

   Defendant. )

_____

**DEENDANT MOORE'S MOTION TO DISMISS INDICTMENT
ON DUE PROCESS GROUNDS U.S. CONSTIT. AMEND. V**

Defendant, James Rance Moore, moves to dismiss the indictment in the cause

above-styled on the grounds that it violates his right to due process under *U.S. Constit.*

*Amend. V* and in support of this Motion would show:

1.       The indictment in this case charges Defendant Moore with possession of

three (3) short-barrel rifles on June 27, 2022, in a single-count, allegedly in violation

of 26 *USC* §5861(d), 5871.

2.       The statute, 26 *USC* §5861(d), makes it illegal to receive or possess a

firearm not registered to the possessor under the National Firearms Registration and

Transfer record, hereinafter referred to as the "NFA".

3.       The manner in which it is alleged Defendant Moore violated the NFA

requires reading the definition of "firearm" 26 *USC* §5845(a)(3) and the definition of

"rifle" 26 *USC* §5845(c) to determine if Defendant possessed firearms that required registration.

4.     Section 5845(c) is ambiguous in its definition of rifle and results in the statutory sections to be applied to the charge in this case, 26 *USC* §§5845(a)(3), (c), and 5861(d), so ambiguous as to violate due process guaranteed Defendant under *U.S. Constit. Amend IV, see, U.S. v. Thompson/Center Arms Co.,* 504 U.S. 505, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992); *Hardin v. ATF*, 65 F.4th 895 (6th Cir. 2023); *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023); *U.S. v. Kwok Leung Kwan*, 2007 WL 9753037 (W.D. Wash. 2007); *Mock v. Garland*, 75 F.4th 563 5th Cir. 2023).

5.     The Bureau of Alcohol, Tobacco, Firearms and Explosives, hereinafter "ATF" is delegated authority to regulate registration of short-barrel rifles by the United States Attorney General.   The authority of ATF includes its interpretation of the definition of short-barrel rifle under the NFA.   *Mock v. Garland*, 75 F.4th 563, 568. The ATF recently published a new rule interpretating that definition.   The new rule is published as part of the Notice of Proposed Rule – Making hereafter "NPRM" found at 88 FR 6478-6575, 2023 WL 1102552 (F.R.).   The factual representations contained in the NPRM and the criteria that define SBRs set out in the new rule support Defendant's claim of ambiguity of 26 *USC* §5845(a)(3) and (c).

6.     The definition of short-barrel rifle contained in the NFA as variously interpreted by the ATF, renders the statute, 26 *USC* §§5845(a)(3) and (c), so vague as

to violate Fifth Amendment due process for vagueness. *U.S. Constit. Amend. V; see, Johnson v. United States*, 576 U.S. 591, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015); *U.S. v. Lim*, 444 F.3d 910 (7th Cir. 2006).

7.      The definition of short-barrel rifle found in 26 *USC* §§5845(a)(3) and (c) and as interpreted by ATF for enforcement, is unconstitutionally ambiguous and vague and violates due process guaranteed Defendant under the Fifth Amendment.  The rule of lenity applies because of the criminal penalties imposed for violating the statute, 26 *USC* §5871.  *Thompson/Center Arms Co., Hardin, Cargill, supra.*

## MEMORANDUM OF LAW

Defendant Moore submits his memorandum of law in support of his foregoing Motion to Dismiss.

*Facts:*  Defendant, Jesse Rance Moore, was a 13 year veteran of the Florida Highway Patrol when he received a medical severance in 2016.  June 27, 2022, he was arrested for three (3) Hobbs Act robberies of pharmacies in North Florida. Because of the locale of the offenses, he was tried for these robberies in the Middle District of Florida Federal Court, Jacksonville division.  He was convicted of those crimes and was sentenced to 252 months' imprisonment.

June 27, 2022 is an important date because Defendant was arrested at his home in Bell, Florida (Northern District) on the robbery charges.  Attendant to that arrest, a search warrant was executed on Defendant's home and all firearms he owned were

seized by the Government at that time.  Since Defendant has been in continuous custody of the federal government since June 27, 2022, he could not possess any firearms after that date.  The three alleged short-barrel rifles "SBRs" which he is alleged to have possessed in the indictment in this case were seized June 27, 2022, under the search warrant, as well as more than 40 other firearms.

Coincidentally, while Defendant Moore was being arrested, the ATF was nearing completion of the formulation of a new rule by which it would enforce the NFA prohibition against possession of unregistered SBRs.  June 10, 2021, ATF published a NPRM to amend the definition of rifle to provide criteria for stabilizing braces to determine if the new designs facilitated shoulder firing.  88 F.R. 6479.

Generally, any firearm that was designed to be fired from the shoulder was a rifle and depending on the length of the barrel could be an SBR regulated under the NFA.  A weapon that could be fired singlehandedly was classified as a pistol even though it could have a rearward extension from the grip and receiver.  The design of the pistol began to change about 2012 when stabilizing braces were introduced that permitted singlehanded firing of relatively long-barrel pistols.  This started the odyssey of ATF interpretations on what constituted a SBR under the NFA.

ATF advised in 2012 that an AR-type pistol with stabilizing brace would not change the pistol classification i.e., it would not be considered an SBR.  88 F.R. 6482. In 2014, ATF advised an "unlicensed person" that firing an AR-type pistol from the

shoulder did not reclassify the pistol as an SBR.  88 F.R. 6483.  So, use of a firearm, even if fired from the shoulder, did not make the weapon an SBR.

Other pistol modifications were approved by ATF as not causing the weapon to be classified as an SBR:  (1) 2014, a "Pistol Overmold Kit" with a foam-padded stabilizer tube (this gave a rearward extension from the receiver) was not an SBR; (2) Blade AR pistol stabilizer (also a rearward extension) was not an SBR; 2015, raised ridges on the rear of stabilizer did not make an SBR; from 2016 to 2020, other stabilizing braces of different designs were approved as being pistols to which the NFA did not apply.  Examples and photographs are provided of these approved designs in the NPRM, 88 F.R. 6487-6494.  In the NPRM, ATF candidly states: "by late 2020, ATF concluded that: (1) *previous ATF classification determinations had led to confusion* and there was a need to provide clarity to the firearms industry and public on how ATF evaluates firearms equipped with a 'stabilizing brace'' . . .".  88 F.R. 6494. (Italics added).

Most, if not all, stabilizing braces that were introduced as attachments to pistols extended rearward of the pistol grip and took many forms.  ATF evaluated the increasing length of the newly configured pistols with the view of whether the design was made, or intended to be made, for firing from the shoulder.  Because the barrel(s) were less than 16 inches, if the new design was to be shoulder-fired, then the weapon came within the regulatory purview of the NFA.

The "Buffer Tube" configuration was an attachment to a pistol receiver that came into use. This was a rearward extension that could be considered a configuration to facilitate shoulder-fire. The ATF has explained that the buffer tube configuration may or may not indicate the pistol is designed, made or intended to be fired from the shoulder. In the NPRM of January 2023, the ATF said:

> "For example, are AR-type pistol with a standard 6- to 6½ -inch buffer tube may *not* be designed, made, and intended to be fired from the shoulder even if the buffer tube provides surface area that allows the firearm to be shoulder fired. On an AR-type pistol, the buffer tube encases a spring that drives the bolt forward when the bolt is driven into the buffer tube by the gas from the initial shot." 88 F.R. 6537, 6538 (Italics added).

But,

> "In contrast, if the buffer tube, receiver extension or other component is not required for the cycle of operations of the weapon, ATF may conclude it serves no purpose but to extend the rear surface area of the weapon. . . to shoulder-fire the firearm." 88 F.R. 6538.

By the words of the ATF, buffer tubes of the same length may be attached to the receivers of two pistols that give them the same overall length in judging whether the

length is sufficient to say the design is for shoulder-fire.  One having a spring involved in the weapon cycle of operation is not regulated as an SBR under the NFA.  The one with the solid buffer tube falls within the ambit of the NFA regulation.

Having acknowledged years of confusing interpretations published to the public and gun manufacturers, the ATF has now announced it is amending its definition of "rifle".  Ostensibly the amendment is to refocus the inquiry to more closely adhere to the concept of whether the firearm is to be fired from the shoulder.  The inquiry is to include consideration of six (6) factors:

"(1) Whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;

"(2) Whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method), that is consistent with similarly designed rifles;

"(3) Whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;

"(4) Whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;

"(5) The manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and

"(6) Information demonstrating the likely use of the weapon in the general community."  88 F.R. 6480.

The above six (6) factors are part of ATF's interpretation of what constitutes an SBR under the NFA going forward from date of January 31, 2023, although the NPRM gives a compliance date May 31, 2023.  88 F.R. 6478.  Within the four-month compliance period, persons who possess unregistered SBRs can avoid any penalties by taking any one of five actions:

"1. Remove the short barrel and attach a 16-inch or longer rifle barrel to the firearm . . .

"2. Submit through the eForms system an Application to Make and Register a Firearm . . . by May 31, 2023.

"3. Permanently remove and dispose of, or alter, the 'stabilizing brace' such that it cannot be reattached, thereby removing the weapon from regulation as a 'firearm' under the NFA.

"4. Turn the firearm into your local ATF office.

"5. Destroy the firearm."  88 F.R. 6570.

What criteria the ATF is using in Mr. Moore's case is, at best, unclear.  In partial discovery, the government has produced registrations under the GCA for three (3) "lowers" acquired by Mr. Moore.   The serialization of these "lowers" are the identifications used by the ATF to identify Mr. Moore's units of SBRs.  The "lowers" are AR-15-style lowers that can be used for pistols or for rifles.  It is asserted these "firearms" are not sold for SBRs.  The lowers can be attached to short barrels and fired single-handed.  As a side note, Defendant does not concede that the AR-15 lowers are even firearms that require registration under the GCA.  This will be discussed in the legal analysis below.  Barrels attached to the "lowers" are not serialized because the barrels do not require GCA registration.

The question arises on the facts of this case, is the ATF applying the criteria of its Form 4999 to classify Mr. Moore's units as SBRs or is it using the rule announced in the NPRM?  At this juncture, Defendant is not apprised of any other investigative criteria ATF may have obtained, or proposes to use to prove, Moore's units are SBRs. Certainly, use of the unit(s) for shoulder fire is not the determining factor under the old rule interpretation as previously pointed out.  The wide divergence of the "old rule" from the "new rule" of interpretation of "shoulder-fire" illustrates patent ambiguity and vagueness in the law.

## QUESTIONS PRESENTED

(1)     Whether 26 *USC* §5845(a)(3), (c), in combination, are so ambiguous in the definition of SBR as interpreted by the ATF as to violate due process guaranteed Defendant Moore by *U.S. Constit. Amend V*;

(2)     Whether 26 *USC* §5845(a)(3), (c), in combination, are so vague in the definition of SBR as interpreted by the ATF as to violate due process guaranteed Defendant Moore by *U.S. Constit. Amend V*.

## DISCUSSION OF LAW

1.     *Ambiguity*:  If a statute can be read with more than one construction, it is ambiguous.   If any interpretation can result in criminal penalties while another construction may not, the rule of lenity must be applied.  *U.S. v. Thompson/Center Arms Co.,* 504 U.S. 505 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992); *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023); *Hardin v. ATF*, 65 F.4th 895 (6th Cir. 2023).  The NFA, §§5845(a)(3) and (c) can be read with more than one interpretation as the ATF has done many times when considering when a pistol becomes an SBR.  The NFA definition of "rifle" never changed as the manufacture of guns evolved.  Components of guns were marketed to mix and match, and new parts evolved i.e., "uppers", "lowers", bump stocks, stabilizing braces, bumper tubes.  The new components required interpretation as whether the parts were firearms and, if a firearm, how was it to be characterized.

Attachments to pistol-type weapons proliferated principally due to the AR-15-type pistol "lower", the type Defendant Moore purchased in this case. The AR-15 lower was considered a receiver and therefore, a firearm, and had to be registered under the GCA. It is now called in question as whether the AR-15 receiver meets the definition of "receiver" that requires registration. *Vanderstok v. Garland*, 86 F.4th 179 (5th Cir. 2023). *Vanderstok* addressed the 2022 ATF Final Rule defining firearm, receiver and frame under the GCA. The court held the ATF exceeded its statutory authority in the Rule. *Vanderstok*, 86 F.4th 179, 197. In the factual discussion, the court pointed out that the GCA definition of receiver required that it contain three (3) parts, (1) hammer, (2) bolt or breech lock, (3) firing mechanism. *Vanderstok*, 86 F.4th 179, 184. Further, the court points out that the ATF acknowledged that the AR-15 lower does not have all three (3) components of a receiver and is *not* likely to be covered by the GCA. *Vanderstok*, 86 F.4th 179, 184.

When Defendant Moore acquired the three (3) AR-15 lowers, the units were registered to him under the GCA because the units were thought to be firearms, but the units certainly were not receivers as defined in the GCA and were certainly not SBRs under the NFA. The three (3) lowers could only become SBRs by some transformation. Whether the transformation changed the lower into an SBR was an interpretation of the statute left solely to the ATF and the ATF vacillated greatly in its interpretation through the last few years, starting around 2012, per the examples given

above in the statement of facts.  One of the best examples of ambiguity is ATF's acknowledgment that the AR-15 lower can be part of a pistol, a rifle or an SBR.  As gun manufacturers marketed various attachments for the AR-15 lower, the ATF made a plethora of interpretations on whether the new devices required NFA compliance, but the ATF never seemed to hone-in on the NFA definition of rifle (§§5845(c)) requiring that it be made, designed for shoulder-fire.  That is, until the new rule set forth in the NPRM.

Counsel is not aware of any case that adjudicates 26 *USC* §5845(a)(3), (c) to be unconstitutionally ambiguous, but offers other cases finding parts of the NFA so ambiguous as to require the application of the rule of lenity.  The first such case is *U.S. v. Thompson/Center Arms Co., supra*.  The Supreme Court found the definition of "made" under 26 *USC* §5845(i) so ambiguous as to apply the rule of lenity to avoid criminal penalties as provided under the NFA.  Thompson/Center Arms made and offered for sale a kit that contained a pistol (Contender), a 21" barrel, a rifle stock and a wooden fore-end.  The ATF claimed the kit was actually marketing an SBR that was regulated under the NFA.  ATF's theory was the pistol receiver could be used with the rifle stock to create an SBR.  The court said the question was whether the packaging together was enough to constitute "making" an SBR under the NFA.  Finding ambiguity in the statute it was held *Thompson/Center Arms* was not making an SBR just through its packaging.  Interestingly, the ambiguity in *Thompson Center*

*Arms* was so blatant that there were multiple interpretations of what was ambiguous. In his concurring opinion, Justice Scalia, after stating what the plurality thought the ambiguity was, postulated a different ambiguity:

> "I think the ambiguity pertains to the much more fundamental point of whether the making of a regulated firearm includes the manufacture, without assembly, of component parts where the definition of the particular firearm does not so indicate." *Thompson/Center Arms Co.*, 504 US, 505, 519.

The above comment is almost a fast-forward to the present when the AR-15 lower is made, marketed to be configured into long barrel pistols.  It is also interesting to note that the Supreme Court in *Thompson/Center Arms Co.*, a 1992 case, was using the definition of "receiver" as "the metal frame housing the trigger, hammer and firing mechanism."  *Thompson/Center Arms Co.*, 504 US 505, 508.  It bears repeating, the AR-15 lower does *not* contain all these components.

Two recent cases are offered as important to ambiguity under the NFA and both involve 26 *USC* §5845(b) and the regulation of machine guns and whether bump stock operations are included with the definition of machine gun.  *Hardin v. ATF*, 65 F.4[th] 895 (6th Cir. 2023); *Cargill v. Garland*, 57 F.4[th] 447 (5th Cir. 2023).

There are two types of bump stocks that can be employed on semi-automatic rifles to increase the rate of fire, mechanical and non-mechanical.  Both cases deal with

the non-mechanical bump stock.  The ATF considered non-mechanical bump stocks to be just semi-automatic in operation and not a machine gun.  Apparently, in reaction to the mass shooting in Las Vegas in 2017, the ATF formulated a new regulation that defined all bump stocks as machine guns.  Thus, the weapons were regulated under the NFA.  In order to elevate the non-mechanical bump stock to machine gun status, the ATF regulation provided that all bump stock operations were automatic fire with a single pull of the trigger, that is, one trigger pull will continuously expel the ammunition in the weapon until exhausted.  The statute, 26 *USC* §5845(b), requires the weapon to shoot automatically more than one shot by single action of the trigger. *Cargill*, 57 F.4th 447, 458.  Examining the operation of a bump stock semi-automatic, the court found such a weapon does not continue on automatic fire with just a single trigger pull.  When the shooter pulls the trigger, to keep firing, the shooter must maintain forward pressure on the barrel and backward manual pressure on the trigger ledge.  *Cargill*, 57 F.4th 447, 463.  So, the mechanical bump stock does not fire more than one shot with just one pull of the trigger.  The new ATF regulation then conflicted with the statutory language defining machine gun.  The *Cargill* court found the statute ambiguous and because of criminal penalties imposed, it was bound to apply the doctrine of lenity.  *Cargill*, 57 F.4th 447, 471.

Hardin, supra, was decided four (4) months after *Cargill* and held 26 *USC* §5845(b) ambiguous as interpreted by the ATF rule and lenity applied.  The *Hardin*

court reviewed the circuits split on the issue of whether bump stocks were included in the definition of machine guns to include 22 opinions and 350 pages of text.  The court found the weight of authority held the definition of machine gun ambiguous as pertains to bump stocks.  *Hardin*, 65 F.4[th] 895, 898.  The case gives a clear definition of statutory ambiguity:

> "The viability of competing interpretations is exemplified not only by the myriad and conflicting judicial opinions on this issue, but also by the ATF's own flip-flop in its position.  And because the statute is "subject to more than one reasonable interpretation," it is ambiguous."  *Hardin*, 65 F.4[th] 895, 898 (citations omitted).

The *Hardin* court criticized the ATF for an apparent single change of position.  That single change in position pales in comparison to the number of times ATF has changed its position on what constitutes an SBR.

Defendant Moore suggests *Mock v. Garland*, 75 F.4[th] 461 is very pertinent to the analysis in this case.  *Mock* reached the appellate court as an appeal of the denial of an injunction that sought to enjoin the ATF from enforcing its final rule interpreting the definition of SBRs.  The appeal reversed the denial of the injunction on a finding that the plaintiff was likely to prevail on the issue of a whether the final rule violated the Administrative Procedures Act (APA).  *Mock*, 75 F.4[th] 563, 567.  The result in *Mock* admittedly does not go directly to Defendant's point of a due process violation

because of ambiguity.  The discussions of SBRs and the NFA in *Mock* contains many facts and legal points in support of Defendant Moore's contentions.

Factually *Mock* starts with a basic discussion of pistol, rifle and short barrel rifle (SBR).  It points out that the NFA does not define "pistol" but does define "rifle" and sets out the text of 26 *USC* §5845(c).  The *Mock* court then goes on to say:

> "Putting all of that together, a weapon is a 'rifle'---that is, either an ordinary rifle (which is not an NFA 'firearm') or a short-barreled rifle (which is)---only if it is 'designed,' 'made,' and 'intended to be fired from the shoulder.' " *Mock*, 75 F.4th 561, 568.

And, *Mock* points out the definition of rifle is the same under the GCA and NFA. Having previously said the NFA does not define "pistol", the court points out that the GCA does define handgun (pistol) (18 *USC* §921(a)(30)).  It summarizes the attributes of "handgun" (pistol):

> "A handgun, intended to be fired with one hand, is statutorily required to have a short stock and functionally does not need a longer one for recoil management or aim."  (Footnote omitted, quoted *infra*).

Footnote 6 is very important because it emphasizes further ambiguity in ATF's interpretation of "braced" pistols.  Previously the ATF said a weapon is a pistol if it can be fired with one hand.  Footnote 6 points out the practices in modern day shooting:

16

"6.  Generally speaking, most pistols are actually fired with two hands, with the dominant hand gripping the pistol itself and the supporting hand gripping on top of the dominant hand."  *Mock*, 75 F.4th 563, 597.

*Mock* sets forth examples of the ATF rulings from 2012 forward where it approved various "brace" device attachments to "receivers" that did not require compliance with the NFA.  *Mock*, 75 F.4th 563, 571-572.  Defendant Moore has referred to the term AR-15 to describe the receiver that ATF requires to be registered under the GCA.  Footnote 7 of the majority opinion in *Mock* explains that nomenclature:

"7.  'AR' stands for 'ArmaLite Rifle' (named after the original developer), and AR-15 rifles are rifles based on the design of the original AR-15 military rifle.  AR-pistols are pistol-length versions of the rifle without a stock."  *Mock*, 75 F.4th 563, 597.

The *Mock* court commented on the stock requirement thusly:

"[The] statutory emphasis on a stock leads to some odd results:  An AR-style rifle with a barrel shorter than 16 inches is subject to the restrictions of the NFA, while an identical AR-style pistol with similar dimensions but missing a shoulder stock is not."  (Footnote omitted, quoted *supra*).

The above quote is just pointing out another ambiguity in the interpretation of what constitutes an SBR.

To briefly recap, about 2012 forward, manufacturers designed many and varied forms of stabilizing braces for pistols. Many of these designs were rearward extensions from the pistol grip, but not in the customary shape of a stock that is on the regular rifle. So, Defendant Moore would suggest that the rifle stock configuration was not the touchstone in deciding when a pistol lower was made into an SBR. This is concluded because the ATF now evaluates SBRs principally on whether the weapon can be shoulder fired. To shoulder fire a pistol (an AR-15 lower) it must be configured with some rearward extension and other assist e.g., sights consistent with shoulder fire. ATF has made many ambiguous rulings on whether such configurations accommodate shoulder fire such as to require NFA regulation.

2.   *Vagueness*:  Under the ordinary (and legal) meaning of ambiguity, the subject matter can be interpreted differently without changing the language and result in wholly separate meanings. But when the subject matter is vague, it cannot be understood. When does vagueness of a statute rise to constitutional proportions, is answered in *Johnson v. U.S.*, 576 U.S. 591, 135 S.Ct. 2551, L.Ed.2d 569 (2015). *Johnson* was the Supreme Court decision that invalidated the residual clause of the ACCA. The court held the statute violated Fifth Amendment due process for vagueness. The court clearly defined vagueness:

> "The Fifth Amendment provides that '[N]o person shall be . . . deprived
> of life, liberty, or property without due process of law.'   [T]he

government violates this guarantee by taking away someone's life, liberty or property under a criminal law so vague that it fails to give ordinary people fair notice of conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. 591, 595 (Citations omitted).

And further,

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law.' And a statute that flouts it violates the first essential of due process.'". *Johnson*, 576 U.S. 591, 596 (Citations omitted).

The vague statute in this case, 26 *USC* §§5845(a)(3), (c), and the arbitrary enforcement of the statute by ATF, threatens Defendant Moore's liberty.  It has already resulted in the loss of his property because of the government's confiscation of his firearms.  The history of SBR regulation discussed in this memorandum reflects wholly arbitrary enforcement without any consistent standards to be applied to determine whether a weapon is one regulated as an SBR under the NFA.  The very fact ATF has put forth a new rule in the NPRM that lists a consideration of six (6) factors in determining whether a weapon is an SBR, illustrates the vagueness and confusion existing before the rule.

Defendant Moore's arguments directed to the ambiguity of the statute reinforces his claim that the statute is unconstitutionally vague.  Simply put, with so many and

varied interpretations (ambiguity), the statute cannot be understood in its enforcement by ordinary people; so, it is unconstitutionally vague.

*Conclusion*:  26 *USC* §§5845(a)(3) and (c) read together and as defining a short barrel rifle are ambiguous to a degree that violates due process guaranteed by *U.S. Constit. Amend. V* and the court should apply the rule of lenity and dismiss the indictment in this case against James Rance Moore.

Further, 26 *USC* §§5845(a)(3) and (c) read together and defining a short barrel rifle are so vague in the definitions and so lacking in standards for enforcement that the ordinary citizen cannot discovery the meaning of the statute, nor the terms of enforcement.  Therefore, the statute violates due process guaranteed by *U.S. Const. Amend. V* and the indictment of Jesse Rance Moore under those statutes should be dismissed.

> /s/Anderson E. Hatfield
> **ANDERSON E. HATFIELD**
> **Attorney for Defendant**
> **Post Office Box 2085**
> **Keystone Heights, FL   32656**
> **(352)-377-5704**
> **Florida Bar No. 142398**

## CERTIFICATE OF WORD COUNT

I certify the word count of this Motion and Memorandum is 4640.

> /s/Anderson E. Hatfield
> **ANDERSON E. HATFIELD**
> **Attorney for Defendant**

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished electronically via the CM/ECF system to F. T. Williams, Assistant U.S. Attorney, frank.williams@usdoj.gov, this 1st day of March, 2024.

 /s/Anderson E. Hatfield
**ANDERSON E. HATFIELD**
**Attorney for Defendant**